UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DERRICK GUNN                                    CIVIL ACTION

VERSUS                                          NUMBER: 11-01172

MICHAEL J. ASTRUE,                              SECTION: "J"(5)
COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION


## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(B), this
matter comes before the Court on the parties' cross-motions for
summary judgment following a decision of the Commissioner of the
Social Security Administration denying plaintiff's application for
Disability Insurance Benefits ("DIB").  (Rec. docs. 8, 9).

Derrick Gunn, plaintiff herein, filed the subject application
for DIB on August 4, 2009, with a protective filing date of July 8,
2009, alleging disability as of February 21, 2008. (Tr. pp. 77-80,
88).[1]/  In a Disability Report that appears in the record the

---

[1]/ Plaintiff's application for DIB actually identified the
onset date as December 1, 2003 but that date was later amended to
February 21, 2008, the day following the denial of a previous
application for DIB that plaintiff had filed. (Tr. pp. 24-25, 88-

conditions resulting in plaintiff's inability to work were identified as "back and neck injury". (Tr. p. 105). Plaintiff's application for DIB was denied at the initial level of the Commissioner's administrative review process on August 26, 2009. (Tr. pp. 39-42). Pursuant to plaintiff's request, a hearing de novo before an Administrative Law Judge ("ALJ") went forward on January 20, 2010 at which plaintiff, who was represented by counsel, and a Vocational Expert ("VE") appeared and testified. (Tr. pp. 50-51, 22-36). On April 27, 2010, the ALJ issued a written decision in which he concluded that plaintiff was not disabled within the meaning of the Social Security Act. (Tr. pp. 9-21). The Appeals Council ("AC") subsequently denied plaintiff's request for review of the ALJ's decision, thus making the ALJ's decision the final decision of the Commissioner. (Tr. pp. 1-6). It is from that unfavorable decision that the plaintiff seeks judicial review pursuant to 42 U.S.C. §405(g).

In his cross-motion for summary judgment, plaintiff frames the issues for judicial review as follows:

I.   [t]he ALJ failed to apply the proper legal standard when determining the credibility of the plaintiff.

II.  [t]he ALJ did not apply the correct legal standard when assessing plaintiff's RFC and the finding is not supported by substantial evidence.

---

89, 105).

III. [t]he ALJ erred in applying the Medical Vocational Gridrules.

(Rec. doc. 8-2, p. 6).

Relevant to the issues to be decided by the Court are the following findings that were made by the ALJ:

1. [t]he claimant last met the insured status requirements of the Social Security Act on December 31, 2008.

2. [t]he claimant did not engage in substantial gainful activity during the period from his alleged onset date of February 21, 2008 through his date last insured of December 31, 2008. (20 CFR 404.1571 *et seq*).

3. [t]hrough the date last insured, the claimant had the following severe impairments: low back pain and degenerative disc disease. (20 CFR 404.1520(c)); <u>Stone v. Heckler</u>, 752 F.2d 1099 (5th Cir. 1985).

4. [t]hrough the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. [a]fter careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform the full range of light duty work as defined in 20 CFR 404.1567(b).

6. [t]hrough the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. [t]he claimant was born on July 12, 1957 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date last insured. (20 CFR 404.1563).

8. [t]he claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.    [t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR part 404, Subpart P, Appendix 2).

10.   [t]hrough the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11.   [t]he claimant was not under a disability, as defined in the Social Security Act, at any time from February 21, 2008, the alleged onset date, through December 31, 2008, the date last insured (20 CFR 404.1520(g)).

(Tr. pp. 14, 15, 18, 19).

Judicial review of the Commissioner's decision to deny DIB is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision, and (2) whether the decision comports with relevant legal standards. Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir. 1992); Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990); Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision.

Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues de novo, nor may it substitute its judgment for that of the Commissioner. Cook v. Heckler, 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve, not the courts. Patton v. Schweiker, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant seeking DIB bears the burden of proving that he is disabled within the meaning of the Social Security Act. Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Once the claimant carries his initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is, therefore, not disabled. Harrell, 862 F.2d at 475. In making this determination, the Commissioner utilizes the five-step sequential analysis set forth in 20 C.F.R. §404.1520, as follows:

1.   an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.

2.   an individual who does not have a "severe impairment" will not be found to be disabled.

3.   an individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors.

4.   if an individual is capable of performing the work that he has done in the past, a finding of "not disabled" must be made.

5.   if an individual's impairment precludes him from performing his past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.

On the first four steps of the analysis, the claimant bears the initial burden of proving that he is disabled and must ultimately demonstrate that he is unable to perform the work that he has done in the past. Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5 (1987). If the claimant carries that burden and successfully demonstrates that he is unable to perform the work that he has done in the past, the burden of proof shifts to the Commissioner at the fifth step to show that the claimant can perform other work in light of his age, education, work experience, and physical and mental limitations. Kramer v. Sullivan, 885 F.2d 206, 208 (5th Cir. 1989). In determining whether there is other work available that the claimant can perform, the Commissioner may

rely exclusively on the Medical-Vocational Guidelines of the Regulations (the "Grids") when the claimant suffers only from exertional impairments or when his non-exertional impairments do not significantly affect his residual functional capacity. <u>Selders v. Sullivan</u>, 914 F.2d 614, 618 (5th Cir. 1990); <u>Fraga</u>, 810 F.2d at 1304. Once the Commissioner demonstrates that the individual can perform other work, the burden then shifts back to the claimant to rebut that finding. <u>Mays v. Bowen</u>, 837 F.2d 1362, 1364 (5th Cir. 1988); <u>Fraga</u>, 810 F.2d at 1302.

At the outset of the administrative hearing that was held on January 20, 2010, counsel for plaintiff clarified that the alleged onset date was actually February 21, 2008, the day following the denial of a previous application for DIB that plaintiff had filed. Counsel then argued that plaintiff had enjoyed a long work life, being employed as the general manager of a metal barricade company for some sixteen years prior to getting injured. As a result of that injury, plaintiff had undergone a two-level fusion at the hands of Dr. Henry Eiserloh with the doctor's most recent report indicating that plaintiff experienced difficulty in lifting and in remaining in one position, needing frequent changes in position that consequently made work difficult. Counsel thus argued that plaintiff was disabled or, at best, was limited to sedentary work and that Rule 201.14 of the Grids would direct a finding of

7

"disabled".  Plaintiff's insured status for purposes of DIB had expired on December 31, 2008. (Tr. pp. 24-26).

After the documentary exhibits were admitted into evidence, plaintiff took the stand and was questioned by his attorney.  He was fifty-two years of age at the time, stood 5'8" tall, weighed one hundred eighty-two pounds, had attended eleven years of formal education, and had a GED. Plaintiff described the particulars of his most recent job as involving the delivering and picking up of fifty-pound metal barricades, sandbags, and barrels to various construction sites.  While he was in a company truck in December of 2003, plaintiff had been rear-ended by another driver and had not worked since then. The accident resulted in injuries to plaintiff's lumbar and cervical spines for which he underwent a two-level fusion with rod and screw placement.  Plaintiff experienced a great deal of pain to his back which was stabbing in nature in the side and up and across his back.  A bulging disc in his neck caused pain that radiated down the left upper extremity into the hand with resulting numbness.  Plaintiff took Tramadol for pain relief which sometimes caused gastrointestinal upsetment, fatigue, and a rash to his face. (Tr. p. 26-29).

Continuing, plaintiff testified that he spent the bulk of an average day lying on a heating pad for pain relief.  While he once enjoyed hunting, fishing, and shrimping before his accident such

activities could no longer be performed. Plaintiff estimated that he could stand for only ten to fifteen minutes before experiencing stabbing back pain and burning pain to the left side. He could walk only one block before suffering stabbing back pain and pain to the right leg. Plaintiff speculated that he could probably climb a flight of stairs but could not do so on a continuous basis as that would adversely affect his back. Lifting was limited to taking the trash out for pick-up. Sitting was limited to ten to fifteen minutes depending on the weather following which he experienced stabbing pain to his back where the rods had been installed. Plaintiff estimated that he spent half of any given day lying on a heating pad. (Tr. pp. 29-32). Upon being tendered to the ALJ for further questioning, plaintiff was asked what his condition was during the relevant time period of February 21, 2008 to December 31, 2008. In answer thereto, plaintiff reiterated experiencing back pain, nerve damage in the back with resulting leg pain, and tightness in the right leg. A problem disc also caused neck pain which radiated down the left upper extremity and caused numbness in the hand. (Tr. p. 32).

Debra Bailey, a VE, was next to take the stand. She first classified the exertional and skill demands of plaintiff's past work as medium, skilled work involving the frequent lifting of objects weight twenty-five pounds and the occasional lifting of

objects weighing fifty pounds. The ALJ then posed a hypothetical question to the VE which assumed an individual of plaintiff's age and education who was capable of light-level work. In answer to that question, the VE testified that the individual described in the hypothet could not perform plaintiff's past work. However, the individual could perform the light, unskilled jobs of general office clerk, information clerk, and cashier, with significant numbers of such jobs existing in the national and local economies. The ALJ then posed a second hypothetical question to the VE which assumed an individual who suffered from severe, unrelieved pain that significantly decreased concentration, persistence, and pace. In answer to that question, the VE testified that the described individual could not work. However, the existence of moderate pain would not preclude the performance of the three light-level jobs. (Tr. pp. 33-34).

On cross-examination by plaintiff's counsel, the VE was asked to assume the same profile as the ALJ's first hypothetical question but the individual was unable to remain in one position for very long and had to alternate between sitting and standing every ten minutes. With that added requirement in mind, the VE testified that the described individual could not perform light-level work and would, at best, be relegated to sedentary-level jobs. In his concluding remarks to the ALJ, counsel pointed out that the

alternating sitting/standing requirement was a restriction that had been imposed by Dr. Eiserloh in a letter dated May 26, 2008 which fell within the relevant time period. (Tr. pp. 34-36).

The medical records that were admitted in the administrative proceedings are relatively sparse and do not include any operative notes or the like that were generated in connection with plaintiff's two-level lumbar decompression and fusion that was reportedly performed in 2006. On April 11, 2007, plaintiff was seen for re-evaluation by Dr. Eiserloh for complaints of low back pain no but leg pain. Plaintiff was said to be doing "quite well" as compared to his pre-operative condition, occasionally taking Valium and Lortab and benefitting from physical therapy. Plaintiff had a decreased range of motion to the lumbar spine and tender paraspinals but no spasm, erythema, swelling, rash, or lesion. His gait was normal and lower extremity neurology was normal for motor, sensory, and reflex function. X-rays revealed an impending osseous union of the anterior column. The impression was low back pain and a history of lumbar decompression and fusion. Plaintiff was given a refill of his Valium and Lortab as well as a prescription for physical therapy. (Tr. pp. 140-141).

Plaintiff returned to Dr. Eiserloh for a six-month follow-up visit on October 10, 2007, reporting back pain at a level of 8/10 and some right leg pain at a level of 3-4/10. By that time,

plaintiff was reportedly living on his own and was thus doing his own chores and grocery shopping which elicited pain. Plaintiff was doing exercises once or twice per week and was taking his prescribed medications but increased activity caused an increase in his pain. The doctor noted that plaintiff was still not working but was actively pursuing disability benefits. A physical examination of the spine produced results that were unchanged from the previous visit and a neurological exam was normal. X-rays revealed that the L4-5 and L5-S1 segments had fused. The impression was low back pain, disc degeneration, and deconditioning. Dr. Eiserloh remarked that plaintiff was "grossly deconditioned" and he thus asked plaintiff to do his exercises every day. Celebrex was added to plaintiff's medication regimen and he was to return to the doctor in one year. (Tr. p. 139).

On May 26, 2008, Dr. Eiserloh authored correspondence in response to a letter from an attorney requesting additional information on plaintiff. In that missive, the doctor recalled performing the decompression/fusion surgery on plaintiff which resulted in a diminution of his pain but yet he reportedly remained significantly impaired. Reflecting back on plaintiff's most recent office visit, Dr. Eiserloh noted that plaintiff was at that time able to do some grocery shopping and to engage in some of the activities of daily living but was nevertheless restricted in his

ability to function.  Plaintiff was said to have difficulty with lifting and could not remain in one position for any length of time. The doctor felt that plaintiff had a significant impairment and he disagreed with the assessment that plaintiff did not meet the criteria for disability, stating that it would be very difficult for plaintiff to maintain any meaningful employment.  It was thought that plaintiff would have difficulty getting to and from work as well as performing duties associated with even a sedentary job with frequent position changes.  Dr. Eiserloh felt that plaintiff had a permanent impairment secondary to his lumbar condition, that he was "significantly deconditioned", and that the latter situation was not expected to improve any time in the near future. (Tr. pp. 137-138, 150-151).

On June 26 and 27, 2008, refills for plaintiff's Celebrex, Lortab, and Valium were authorized.  (Tr. pp. 162-164).   An additional refill for Valium was authorized on September 23, 2008. (Tr. p. 161).  A further refill on the Lortab was disapproved on September 30, 2008 and plaintiff was instructed to return to the Clinic for another evaluation. (Tr. p. 160).

Plaintiff returned to Dr. Eiserloh on November 17, 2008 and reported that his back and neck pain were a little better than at his previous visit.  Pain was at a level of 7/10 and increased with activity.  Plaintiff denied leg pain and weakness and was on no

medications at the time but was said to have significant symptoms that restricted his activities of daily living secondary to pain. An examination of the cervical spine revealed a supple, non-tender neck free from spasm but with a decreased range of motion. There was also a decreased range of motion in all planes of the lumbar spine as well as tender paraspinals. A neurological examination of the lower extremities was normal and x-rays revealed good alignment of the hardware and bone graft. The impression was cervicalgia and low back pain. In the "recommendations" portion of his treatment note Dr. Eiserloh opined that plaintiff "... has restrictions based on his pain. He has difficulty functioning with activities of daily living." Plaintiff was prescribed Lodine and Ultram and was to return to the Clinic in six months. (Tr. pp. 136, 157, 159, 153-154).

As scheduled, plaintiff was seen again by Dr. Eiserloh on May 14, 2009 for complaints of persistent low back pain localized to the lumbar spine and the paraspinal area. The pain had decreased to a level of 5/10 and was described as dull and aching and occasionally stabbing in nature. Increased activity could exacerbate his symptoms; plaintiff had stiffness in the morning; and, as the day progressed, he could have increased symptoms. Plaintiff denied any pain to the buttocks or down the legs and there was no paresthesias, dysesthesias, or radicular-type

14

symptoms. Upon physical examination, plaintiff had a decreased range of motion to the lumbar spine and tender paraspinal muscles. A neurological exam of the lower extremities was normal and x-rays revealed good alignment of the hardware and bone grafts. The impression was low back pain, disc degeneration, and diverticulitis that was being treated with antibiotics. Plaintiff was continued on Lortab and Lodine as well as a home exercise program. Dr. Eiserloh advised plaintiff that he suffered from a chronic back condition and that he would never be pain-free although he was markedly improved form his preoperative condition. (Tr. pp. 134-135, 155-156, 158).

On August 20, 2009, plaintiff completed the Administration's "Function Report-Adult" form which elicited information about how his conditions limited his abilities. In that form, plaintiff indicated that an average day consisted of eating lunch and dinner around which he spent his time lying on a heating pad, sitting in a reclining chair, watching TV, and listening to the radio. Plaintiff lived alone and was able to tend to his personal needs but he experienced pain when bending over to put on clothing items like shoes and socks or when washing his feet. He made sandwiches a few times per week but otherwise ordered out or obtained food that had been prepared by his mother. Plaintiff was able to do laundry but reportedly did no other house or yardwork secondary to

pain.  He was able to drive short distances, go out alone, shop weekly, and tend to financial matters.  Plaintiff visited with his mother once per week and interests included watching TV and listening to the radio.  The hardware in plaintiff's back restricted him from a variety of physical abilities, especially on any type of a consistent basis. Plaintiff estimated that he could walk for only fifteen minutes before needing to rest for twenty minutes.  Stress also exacerbated his back pain. (Tr. pp. 95-103).

Finally, on August 26, 2009 an Administration employee reviewed plaintiff's file and completed a "Physical Residual Functional Capacity Assessment" form that was designed to record information about plaintiff's capabilities. There, the reviewer found that no exertional, postural, manipulative, visual, communicative, or environmental limitations had been established. In the "additional comments" section of the form, the reviewer discussed medical records that do not appear in the administrative file that is presently before the Court, including some going back as far as 2002 and 2004 and none of which were generated during the relevant time period of February 21, 2008 to December 31, 2008.[2]/ Ultimately, the Administration reviewer found that there was

---

[2]/ The reviewer also referenced medical records from one Dr. Burger dated "11/5/09" which was obviously a typographical error as the form itself was completed on August 26, 2009. (Tr. p. 149).

insufficient medical evidence of record in the file prior to December 31, 2008 to make a determination on plaintiff's claim. (Tr. pp. 142-149). The hearing before the ALJ would subsequently go forward on January 20, 2010. (Tr. pp. 22-36).

Before turning to the specific challenges enunciated by plaintiff, the Court will address several issues that shape the scope of review in this matter. As was made clear by plaintiff's counsel at the outset of the administrative hearing, the alleged onset date of disability in this case is February 21, 2008, the day following another ALJ's denial of a previous application for DIB that plaintiff had filed. (Tr. pp. 25, 88-89). The affect of that denial was an adverse adjudication of plaintiff's entitlement to DIB up to the date of the denial. 20 C.F.R. §404.955. The doctrine of <u>res judicata</u> precludes the Court from considering plaintiff's entitlement to DIB through the date of that most recent adverse adjudication. <u>Califano v. Sanders</u>, 403 U.S. 99, 107-09, 97 S.Ct. 980, 985-86 (19770; <u>Muse v. Sullivan</u>, 925 F.2d 785, 787 n. 1 (5th Cir. 1991). What is also clear is that plaintiff's insured status and consequent entitlement to DIB expired on December 31, 2008. (Tr. p. 88). For a claimant to demonstrate that he is entitled to DIB, he must prove not only that is he disabled but that he became disabled prior to the expiration of his insured status. <u>Anthony</u>, 954 F.2d at 295. "Any impairment which had its

17

onset or became disabling after the special earnings test was last met cannot serve as the basis for a finding of disability." <u>Owens v. Heckler</u>, 770 F.2d 1276, 1280 (5th Cir. 1985).

As noted earlier, plaintiff challenges the Commissioner's decision to deny DIB on three grounds. In the third of those, plaintiff alleges that the ALJ erred in relying on the Grids to find that he was not disabled. Finding that challenge to have merit, it will be recommended, for the reasons that follow, that plaintiff's case be remanded to the Commissioner for further proceedings.

The Fifth Circuit has held that the Commissioner may rely on the Grids to establish that work exists that a claimant can perform "... only if the guidelines' 'evidentiary underpinnings coincide exactly with the evidence of disability appearing on the record.'" <u>Scott v. Heckler</u>, 30 F.3d 33, 34 (5th Cir. 1994)(quoting <u>Lawler v. Heckler</u>, 761 F.2d 195, 197 (5th Cir. 1985)). Reliance on the Grids can be exclusive when the claimant suffers only from exertional impairments or when his non-exertional impairments do not significantly affect his residual functional capacity. <u>Selders</u>, 914 F.2d at 618; <u>Fraga</u>, 810 F.2d at 1304. "Pain may constitute a nonexertional factor that can limit the range of jobs a claimant can perform." <u>Scott</u>, 30 F.3d at 35 (citing <u>Carter v. Heckler</u>, 712 F.2d 137, 142 (5th Cir. 1983)). "In such cases, the ALJ must rely

upon expert vocational testimony to establish that such jobs exist." Id. (citing Fraga, 810 F.2d at 1304).

In the instant case, the ALJ found that plaintiff suffered from severe impairments in the form of low back pain and degenerative disc disease "... because they cause significant limitation in the claimant's ability to perform basic work activities." (Tr. p. 14). The ALJ further found that "... the medical evidence of record d[id] not support the claimant's contention of pain of incapacitating proportions as alleged" but instead demonstrated "... no more than intermittent and occasional pain that would not preclude the performance of all work." (Tr. p. 17). After determining that plaintiff's conditions did not satisfy the criteria of any of those set forth in the Listing of Impairments, the ALJ concluded that "... the claimant retains the residual functional capacity to perform the full range of light work but is mildly to moderately limited in concentration, persistence and/or pace due to pain." (Tr. p. 18).[3]

In Scott, supra, the Fifth Circuit found that the ALJ had misapplied the Grids in two respects. Just as was done in the present case, "[a]lthough the ALJ rejected Scott's allegation of

_____

[3] Examples of non-exertional impairments include difficulty maintaining attention or concentrating. 20 C.F.R. §404.1569a(c)(ii).

19

disabling pain, he acknowledged that Scott's complaint ha[d] a
basis in the record and that Scott might have slight, occasional
breaks in concentration or attention due to pain." Scott, 30 F.3d
at 35.[4]/ And just as was done in this case, although "[t]he ALJ did
correctly avail himself of the testimony of a vocational expert
...", the panel in Scott "... cannot conclude that the ALJ properly
considered the vocational expert's testimony given only the ALJ's
vague and confusing reference to that testimony in his findings."
Id. (footnote omitted). Unlike the situation that was presented in
Scott, however, the ALJ in the present case made no mention
whatsoever of the VE's testimony in the body of his decision,
instead only incorrectly identifying the VE who "... appeared at
the hearing" at the outset of his decision. (Tr. p. 12). While the
Grids may serve as a framework for a disability determination in
conjunction with the testimony of a VE, the ALJ must make clear
that his findings are based on a VE's testimony or other similar
testimony. Ashworth v. Chater, 99 F.3d 1135, 1996 WL 595626 at *2
(5th Cir. 1996). The mere fact that an ALJ avails himself of a VE's
testimony is not sufficient. Id. at *3. Rather, it must at least

---

[4]/ Despite ordering a remand for proper consideration of the
VE's testimony, in a footnote the Fifth Circuit panel in Scott
found that substantial evidence supported the ALJ's determination
that the plaintiff's pain was not debilitating on the basis of the
objective evidence that was presented in the case. Scott, 30 F.3d
at 35 n. 2.

be determinable from a review of the ALJ's decision that the VE's testimony was thoughtfully considered. Id.

At the administrative hearing, the ALJ elicited testimony from a VE that plaintiff was able to perform certain light-level jobs in spite of his impairments. However, for reasons that are not entirely clear, the ALJ did not even discuss that testimony, much less rely upon it, in adjudicating plaintiff's application for DIB, instead utilizing the Grids despite the existence of a severe impairment in the form of low back pain which resulted in mild to moderate limitations in concentration, persistence, and/or pace. Although the Court is loathe to remand a case for the simple expedient of having the ALJ state that he relied upon the testimony of a VE rather than the Grids, that is the result that is dictated by Scott and Ashworth. The testimony of a VE, after all, is the preferred method of proving that there is other work available that the claimant can perform. Fields v. Bowen, 805 F.2d 1168, 1170-71 (5th Cir. 1985); Lawler v. Heckler, 761 F.2d 196, 197-98 (5th Cir. 1985); Dellolio v. Heckler, 705 F.2d 123, 126-28 (5th Cir. 1983).

Parenthetically, the Court also notes that unlike the typical case in which a claimant is sent to a consultative evaluation and the findings derived therefrom are weighed against those of plaintiff's treating physician(s), the only medical opinion evidence that was admitted in this case came solely from

plaintiff's treating physician.  Indeed, the ALJ in this case did
not even have the benefit of the opinions of an Administration
medical consultant, a non-treating, non-examining source, regarding
the work-related activities that plaintiff was capable of during
the relevant time period as the reviewer was only provided with
records that pre-dated that period by a number of years.  On
remand, the Commissioner may also wish to address that
deficiency.[5]/

## RECOMMENDATION

For the foregoing reasons, it is recommended that plaintiff's
case be remanded to the Commissioner for proper consideration of
the Vocational Expert's testimony.

A party's failure to file written objections to the proposed
findings, conclusions, and recommendation contained in a magistrate
judge's report and recommendation within fourteen days after being
served with a copy shall bar that party, except upon grounds of
plain error, from attacking on appeal the unobjected-to proposed
factual findings and legal conclusions accepted by the district
court, provided that the party has been served with notice that
such consequences will result from a failure to object.  Douglass
v. United Services Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en
banc).

---

[5]/ In light of the Court's disposition of plaintiff's third
challenge to the Commissioner's decision, a discussion of the other
two challenges is pretermitted.

New Orleans, Louisiana, this 24th day of February, 2012.

ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE